IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THOMAS E. BAGLEY, JR.,          :
Individually; THOMAS E. BAGLEY, :
JR., d/b/a BAGLEY PROPERTIES;   :
and THOMAS E. BAGLEY, JR. d/b/a :
BAGLEY PROPERTIES, L.L.C.,      :
                                :
      Plaintiffs,               :
                                :
v.                              :        CIVIL ACTION 05-0457-M
                                :
PROMENADE GROUP, L.L.C., and    :
ROSE PHAN, an Individual,       :
                                :
      Defendants and Third-     :
      Party Plaintiffs,         :
                                :
v.                              :
                                :
TOM BAGLEY and LINDA ALEWINE,   :
                                :
      Third-Party Defendants.   :


MEMORANDUM OPINION AND ORDER


     This action comes before the Court on Defendants' Motion for

Summary Judgment (Docs. 111-12)[1] and Plaintiffs' Motion for

Summary Judgment (Docs. 113-15).  Jurisdiction has been invoked

in this Court under 28 U.S.C. § 1332.  The parties have filed

written consent and this action has been referred to the

undersigned Magistrate Judge to conduct all proceedings and order

---

[1]The Court notes that Defendants have previously filed another
Motion for Summary Judgment (Docs. 45-46).  As the newer Motion (Docs.
111-12) includes all arguments made in the previous Motion, as well as
an  additional argument relative to a more recent claim, the prior
Motion is **STRICKEN**.

the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 27).  After consideration of all the pleadings, both Motions are **DENIED** in their entirety.

The Court finds the relevant facts to be as follows.  The Court will first identify the parties.  Plaintiff Thomas E. Bagley, Jr. is a resident of the State of Georgia (Doc. 94, ¶ 1; Doc. 52, ¶ 1).[2]  Bagley conducts "business as Bagley Properties and/or Bagley Properties, L.L.C." (Doc. 94, ¶ 1; Doc. 52, ¶ 1); Tom Bagley and Bagley Properties are Plaintiffs in this action pursuant to an Order of this Court (*see* Doc. 49, p. 2). Defendant Promenade Group, L.L.C. (hereinafter *Promenade*) is a limited liability company organized under the laws of the State of Utah, also the site of its principal place of business (Doc. 94, ¶ 2; Doc. 52, ¶ 2); Defendant Rose Phan (hereinafter *Phan*) is a resident of the State of California (Doc. 94, ¶ 3; Doc. 94, ¶ 3).  Promenade and Phan are also Third-Party Plaintiffs in this action (Doc. 9).  Plaintiff Bagley, the individual, and Linda Alewine are Third-Party Defendants (Doc. 25).[3]

On April 20, 2005, a Purchase Agreement (hereinafter

---

[2]The Court notes that Document 94 is Plaintiffs' Third Amended Complaint.  Document 52 is Defendants' Answer to Plaintiffs' Second Amended Complaint.  Defendants, in their Answer to the Third Amended Complaint, state that they "adopt and re-allege the allegations contained in the answers they have previously filed" (Doc. 95, p. 1).

[3]The Third-Party Complaint fails to state the citizenship of Alewine (*see* Doc. 25); Court records indicate that her summons was sent to Orange Beach, Alabama (Doc. 9, Summons 2).

*Purchase Agreement*) was entered into in which Phan agreed to purchase Unit D1108 of Phase 1 of Turquoise Place in Orange Beach, in Baldwin County, Alabama, for the sum of one million, three hundred thirty thousand, nine hundred dollars ($1,330,900); Phan signed her name as the Purchaser and printed *Promenade Group, L.L.C.* out beside her signature (Doc. 1, Exhibit A, ¶¶ 1, 26). Thomas Bagley signed the Purchase Agreement as the Seller and printed *Bagley Properties, L.L.C.* to the side of his name (*id.* at ¶ 27). The Purchase Agreement specified that title to the property was to be made in the name of Promenade Group, L.L.C. (*id* at ¶ 14). The Seller acknowledged receiving a check for three hundred forty-six thousand, one hundred eighty dollars ($346,180) (*id.* at ¶¶ 19-20). Bagley also stated that he would "change [the] escrow account to Promenade Group, L.L.C. after acceptance of [the] contract from [the] Developer;" this provision also referenced two exhibits to the Purchase Agreement (*id.* at ¶ 20). Exhibit A was dated April 22, 2005 and summarized the basic terms of the Purchase Agreement but further stated that the escrow funds would be held by Wachovia Bank and that "all necessary documents will be transferred from Bagley Properties to Promenade Group within the 7-10 days" (*id.* at Exhibit A). Exhibit B to the Purchase Agreement is a document entitled "Assignment of Contract Rights" (hereinafter *Assignment*) in which Bagley Properties assigned its rights to Promenade; the document

3

stated that two hundred forty-six thousand, one hundred eighty dollars ($246,180) will "replace warrant money now held in escrow with Turquoise Properties, L.L.C." while one hundred thousand dollars ($100,000) was considered earnest money to be reimbursed to Bagley Properties, L.L.C. (*id.* at Exhibit B).  The Assignment was signed by Bagley and Phan but it was not notarized (*id.*).

On April 21, 2005, Phan wrote a check to Bagley Properties for three hundred forty-six thousand, one hundred eighty dollars ($346,180) (Doc. 114, Exhibit 1).  The hand-written name in the upper left-hand corner of the check indicates that it was drawn on the account of Promenade Group, L.L.C. (*id.*).  On April 25, 2005, Linda Alewine wrote a check to Wachovia Bank for two hundred forty-six thousand, one hundred eighty dollars ($246,180) for Unit 1108 (Doc. 114, Exhibit 2).  The hand-written name in the upper left-hand corner of the check indicates that it was drawn on the account of Bagley Properties (*id.*).

On April 25, 2005, Bagley and Alewine signed, as purchasers, a "Purchase and Escrow Agreement on Turquoise Place, A Condominium, Phase 1" (hereinafter *Developer Agreement*) for Unit D1108 (Doc. 112, Exhibits 1, 2).  The purchase price was listed as one million, two hundred thirty thousand, nine hundred dollars ($1,230,900) with two hundred forty-six thousand, one hundred eighty dollars ($246,180) to be paid as a down payment (Doc. 112, Exhibit 1, ¶¶ 2-3).  Title to the unit was to be placed in the

4

names of Thomas E. Bagley and Linda Alewine (Doc. 112, Exhibit 2,
¶ 37).  A "Non-Assignment" Clause in the Developer Agreement
stated as follows:

> Purchaser may not sell, lease, assign or
> convey Purchaser's interest in this Agreement
> without the prior written consent of the
> Developer.  Failure to obtain Developer's
> written consent shall, at the sole option of
> Developer, constitute an event of default.
> Purchaser may not record this Agreement in
> the office of the Judge of Probate, Baldwin
> County, AL.

(Doc. 112, Exhibit 1, ¶ 13).  The twenty-five-page document
constituted the entire agreement among the parties (Doc. 112,
Exhibit 2, ¶ 30).  According to the terms of the Developer
Agreement, it did not become effective until it was signed by
both the Purchaser and the Developer as recognized by "the date
set out in this Agreement on the line provided below the
signature of the Developer" (*id.* at ¶ 26).  The Developer dated
his signature as May 1, 2005 (*id.* at p. 21).  The listing agency
for Turquoise Place was Caribe Realty, Inc. which acted as "a
limited consensual dual agent" to the parties for purposes of the
Developer Agreement (*id.* at ¶ 36).

On August 4, 2005, Bagley Properties, L.L.C. filed this
action for Declaratory Judgment against Promenade and Phan,
requesting this Court's determination of contractual obligations
and rights under the April 20, 2005 Purchase Agreement (Doc. 1).

Defendants Answered the Complaint and asserted counterclaims for breach of contract, fraudulent misrepresentation, suppression, and conversion (Doc. 7).  A week later, Promenade and Phan filed a Third-Party Complaint against Bagley as an individual and Alewine, asserting claims of fraudulent misrepresentation, suppression, and conversion (Doc. 9).

On February 9, 2006, the Chief Assistant District Attorney for Baldwin County wrote a letter to Plaintiff's attorney which stated, in large part, the following:

> Ms. Rose Phan has made a criminal complaint to our office regarding her alleged purchase of Unit D-1108, Turquoise Place Condominiums.  Based upon the documentation that has been provided to us by Ms. Phan, we believe there is probable cause to believe that a Theft by Deception has occurred and we are opening a criminal investigation into this matter.
>
> ***
>
> It is my understanding that Bagley Properties, L.L.C. actually is not an existing limited liability corporation.  This concerns me greatly since all of Ms. Phan's contract as a result of her dealings with Mr. Bagley and Ms. Alewine contain the name Bagley Properties, L.L.C.  Quite frankly there are many facts that disturb me and that cause me to believe this may be a criminal matter based on the documentation I have received.

(Doc. 84).[4]  Ultimately, no warrants were issued and no arrests were made (*see* Doc. 15).[5]

On December 14, 2006, Plaintiffs filed their Third Amended Complaint which added a claim of Abuse of Process against Phan (Doc. 94).  On April 12, 2007, Defendants filed a Motion for Summary Judgment (Docs. 111-12); Plaintiffs have filed a Response (Doc. 116) to which Defendants have Replied (Doc. 119).  Also on April 12, 2007, Counter-Defendants and Third-Party Defendants filed a Motion for Summary Judgment against Phan and Promenade (Docs. 113-15); a Response has been filed (Doc. 117) to which there is a Reply (Doc. 120).

The Court notes, as a preliminary matter, that jurisdiction has been invoked under 28 U.S.C. § 1332 (Doc. 1).  In a diversity action, this court has jurisdiction over actions between citizens of different states so long as all plaintiffs are diverse from all defendants, *Strawbridge v. Curtiss*, 7 U.S. 267 (1806), and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(b).  Though the residency of Third-Party Defendant Alewine is uncertain, it appears that she resides in Alabama which would

---

[4]The Court notes that this letter was originally filed as a sealed document.  However, because it is necessary to address the claims raised in this action, *viz.*, the abuse of process claim, the Court **ORDERS** that this document be unsealed.

[5]The Court has not actually found this in print, but notes the following language from Plaintiffs in their Response Brief: "Defendants assumes [sic] that they can only be liable for abuse of process if Bagley and Alewine were arrested or warrants were issued. Such analysis is incorrect" (Doc. 116, p. 15).

satisfy the requirement of *Strawbridge*.  Without going into a discussion of the specific amounts sought by the Parties at this juncture, the Court finds that the $75,000 threshold has been met.

The Rules of Civil Procedure, in discussing summary judgment, state that

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e); *see also Celotex Corporation v. Catrett*, 477 U.S. 317, 325-27 (1986).  The Court further bears in mind, with regard to the motion for summary judgment, that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).  Summary judgment may be granted against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Id.*

In their Motion for Summary Judgment, Defendants first argue that Plaintiffs Bagley and Bagley Properties[6] do not have standing to seek a declaratory judgment in this action as they were not parties to the Purchase Agreement which is the subject-matter of this dispute (Doc. 111, p. 5).  As noted earlier, Bagley signed the Purchase Agreement as the Seller and printed *Bagley Properties, L.L.C.* to the side of his name (Doc. 1, Exhibit A, ¶ 27).

Under Rule 17 of the Federal Rules of Civil Procedure, "[e]very action shall be prosecuted in the name of the real party in interest."  Fed.R.Civ.P. 17(a).  The rule goes on to state the following:

> The capacity of an individual . . . to sue or be sued shall be determined by the law of the individual's domicile.  The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized.  In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held.

Fed.R.Civ.P. 17(b).

In the original complaint, Plaintiffs stated that "Bagley is

---

[6]The Court will distinguish the three Bagley entities for the remainder of this Order as follows:  Bagley, the individual, will be referred to as *Bagley*; Bagley doing business as Bagley Properties will be referred to as *Bagley Properties*; and Bagley Properties, L.L.C. will be referred to as *Bagley L.L.C.*  The Court will refer to Bagley, Bagley Properties, and Bagley L.L.C. collectively as Plaintiffs; however, if a particular claim or issue requires that distinctions be made among the entities, the Court will do so.

a limited liability company organized under the laws of the State of Georgia, with its principal place of business in Georgia" (Doc. 1, ¶ 1).  Defendants admitted the averment, initially, "based on information and belief" (Doc. 7, ¶ 1); now, however, they challenge whether Bagley L.L.C. is—or ever was—incorporated (*see, e.g.*, Doc. 111, p. 5 ("Likewise, Bagley Properties, L.L.C. never existed")).

Plaintiffs have subsequently stated, however, that "Bagley Properties is not an Alabama limited liability company. 'Bagley Properties' and 'Bagley Properties, L.L.C.' are trade names by which Tom Bagley did business as (d/b/a).  Tom Bagley used the designations interchangeably" (Doc. 116, Exhibit 1, ¶ 1).  Though this begs the question as to whether Bagley L.L.C. is a Georgia corporation, as stated in the original complaint, the Court will presume that it is not.[7]

Having made that presumption, the Court will look to Alabama law for a determination of whether Bagley L.L.C. is properly before this Court.  Plaintiffs have pointed to *Lowery v. Hoffman*, 188 F.R.D. 651, 653-54 (M.D. Ala. 1999) for the following proposition:  "When a business entity is not formed under statute or law, it is a sole proprietorship" (Doc. 116, p. 3).  *Lowery* does not really stand for that proposition, however.  It does

---

[7]The Court notes that although they have had ample opportunity to do so, Plaintiffs have not provided documentation of an incorporated status in Georgia or any other state.

state that "a sole proprietorship and its owner are essentially one and the same" though the Court goes on to note that this is only a general proposition.  *Lowery*, 188 F.R.D. at 653 and n.2. Plaintiffs are ultimately looking to get to the conclusion that "[u]nder Alabama law, a sole proprietor and its owner are 'but a single legal entity.'  The proprietor and the proprietorship have no separate legal identity."  *Moorer v. Hartz Seed Co.*, 120 F.Supp.2d 1283, 1288 (M.D. Ala. 2000), quoting *Clardy v. Sanders*, 551 So.2d 1057, 1059-60 (Ala. 1989).

However, as noted, the Court is having trouble with the premise of the argument, *viz.*, that the business is a sole proprietorship.  First, as noted earlier, on April 25, 2005, Alewine wrote a check to Wachovia Bank for two hundred forty-six thousand, one hundred eighty dollars ($246,180) for Unit 1108 (Doc. 114, Exhibit 2).  The hand-written name in the upper left-hand corner of the check indicated that it was being drawn on the account of Bagley Properties (*id.*).  Second, and more important, in the Developer Agreement, title to unit D1108 was to be placed in the names of Bagley and Alewine (Doc. 112, Exhibit 2, ¶ 37). These actions belie Plaintiff's assertion of a sole proprietorship.

The Court cannot say, with any certainty, what business form Bagley Properties and Bagley L.L.C. have assumed.  The inconsistent answers provided by Plaintiffs indicate, at the very

least, that they are unsure as well.  As this uncertainty demonstrates an issue of material fact,[8] the Court must **DENY** Defendant's Motion as to the claim that that Plaintiffs Bagley and Bagley Properties do not have standing to seek a declaratory judgment in this action as they were not parties to the Purchase Agreement.  Until this matter can be resolved, the Court will have a difficult time proceeding with a thorough examination of the claims raised in this action.

In their Motion, Defendants assert three different arguments as to why Plaintiffs cannot assert a breach of contract claim (Doc. 111, pp. 6-9).[9]  Again, because of the Court's uncertainty as to the true business form assumed by Plaintiffs, the Court cannot reach a determination on these three arguments.

---

[8]The Court notes that "[a] material fact is defined as one that would induce a person to act."  *LaCoste v. SCI Alabama Funeral Services, Inc.*, 689 So.2d 76, 79 (Ala. Civ. App. 1996) (citing *Alfa Mutual Insurance Co. v. Northington*, 561 So.2d 1041 (Ala. 1990)).

[9]The first argument is that Bagley "cannot assert a breach of contract claim against the Defendants because at the time of contracting, he and Bagley Properties, L.L.C. had no interest in condominium unit D-1108 and accordingly, was unable to perform the obligations under Bagley Properties, L.L.C.'s contract with Promenade Group, L.L.C." (Doc. 111, p. 6; *see generally* pp. 6-9).  The second argument is that Bagley "cannot assert a breach of contract claim against the Defendants because Bagley Properties, L.L.C., the Plaintiff and Linda Alewine have never obtained the developer's express written consent to assign any of their interest in Unit D-1108 and accordingly, have always been unable to perform any of the obligations contained in Bagley Properties, L.L.C.'s contract with Promenade Group, L.L.C." (Doc. 111, p. 9; *see generally* pp. 9-12). The third argument is that Bagley "cannot assert a breach of contract claim against the Defendants because it has never produced any of the required or necessary documents as mandated under its purchase agreement with Promenade Group, L.L.C." (Doc. 111, p. 12).

Therefore, Defendants' Motion must be **DENIED** as to the breach of contract claim.

Defendants also seek summary judgment on Plaintiffs' claim for abuse of process (Doc. 111, pp. 12-21).  The Court will return to this discussion after examining the other Motion for Summary Judgment.

As noted earlier, Counter-Defendants and Third-Party Defendants have filed a Motion for Summary Judgment against Phan and Promenade (Docs. 113-15).[10]  Plaintiffs first argue that Defendants cannot prove all of the elements of the fraudulent misrepresentation claim (Doc. 115, pp. 7-11).  "The elements of a misrepresentation claim are 1) a misrepresentation of material fact, 2) made willfully to deceive, recklessly, without knowledge, or mistakenly, 3) which was [reasonably][11] relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence."  *Foremost Ins. Co. v. Parham*, 693 So.2d 409, 422 (Ala. 1997)[12] (citing Ala. Code 1975, § 6-5-101 and *Harrington v. Johnson-Rast & Hays Co.*, 577 So.2d 437

---

[10]For purposes of brevity and convenience, the Court will refer to Counter-Defendants and Third-Party Defendants herein, for the balance of this Order, as Plaintiffs, though it is not, technically, totally encompassing.

[11]The Court notes that the standard was formerly "justifiable reliance," but the *Foremost* Court changed it to reasonable reliance, beginning with cases filed after March 14, 1997.  *Foremost Ins. Co. v. Parham*, 693 So.2d 409, 418-21 (Ala. 1997).

[12]Alabama law applies since Alabama was the location of the alleged tort.  *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

(Ala. 1991)).

The first argument Plaintiffs make is that the Defendants cannot show that a misrepresentation of material fact was made (Doc. 115, pp. 7-9).  Defendants have asserted that Plaintiffs, on April 20, 2005, "fraudulently misrepresented that they had a contract to purchase condominium unit D-1108, located in Turquoise Place" (Doc. 52, ¶ 41).  Plaintiffs have stated that "Bagley had an enforceable agreement for the purchase rights to Unit D-1108 at all times" (Doc. 120, p. 2).

The Court finds that the evidence does not support Plaintiffs' assertion.  The first evidence that Plaintiffs had any interest in Turquoise Place comes in the form of the Developer Agreement which was signed by Bagley and Alewine on April 25, 2005 (Doc. 112, Exhibits 1, 2).  As noted earlier, the Developer Agreement did not go into effect until May 1, 2005 (Doc. 112, Exhibit 2, ¶ 26 and p. 21).

Furthermore, title was to pass, through the Developer Agreement, to Bagley and Alewine (*id.* at ¶ 37).  Plaintiffs have not explained Alewine's relationship to Bagley, and, more importantly, failed to demonstrate that she was ready, willing, and able to sell her interest in the condominium unit.  Alewine's name appears nowhere on the Purchase Agreement.

The Court finds that the Defendants have raised issues of material fact which a jury may find induced them to act.  The

Court further finds that Plaintiffs have failed to meet their burden of demonstrating that Defendants cannot show a misrepresentation of a material fact.[13]  Therefore, Plaintiff's Motion for Summary Judgment as to Defendants' misrepresentation claim is **DENIED**.

Plaintiffs next argue that Defendants cannot prove all of the elements of the suppression claim (Doc. 115, pp. 11-12).

> Under Alabama law, a fraudulent suppression claim requires a plaintiff to show:  (1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result of acting or not acting.

*Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1311 (11th Cir. 2000) (quoting *Ex Parte Household Retail Services*, 744 So.2d 871, 879 (Ala. 1999)).

In making their argument regarding the suppression claim, Plaintiffs have challenged Defendants' assertion that Plaintiffs "did not have Turquoise Properties['] written consent to assign its supposed agreement with that entity to the Defendants" (Doc. 52, ¶ 56).  As the Court noted earlier, the Developer Agreement

---

[13]Because Plaintiffs have not met their burden as to this element, further discussion with regard to this claim is unnecessary.

included a Non-Assignment Clause which stated that Bagley and Alewine could "not sell, lease, assign or convey Purchaser's interest in this Agreement **without the prior written consent of the Developer**" (Doc. 112, Exhibit 1, ¶ 13) (emphasis added). Though Plaintiffs have pointed to deposition testimony which purports to give them the right to make such an assignment (Doc. 115, pp. 11-12; *cf*. Doc. 114, Exhibit 4 [Ramey Depo.], pp. 23-24), the consent is not written and clearly comes after the Purchase Agreement was signed.[14]

The Court finds that the Defendants have raised an issue of material fact which a jury may find induced them to act.  The Court further finds that Plaintiffs have failed to meet their burden of demonstrating that Defendants cannot show that Plaintiffs suppressed a material fact.  Therefore, Plaintiff's Motion for Summary Judgment as to Defendants' suppression claim is **DENIED**.

Plaintiffs argue that Defendants cannot prove the elements of their conversion claim (Doc. 115, p. 13).  Defendants have asserted that Plaintiffs "converted to [their] own use the funds of the Defendant" (Doc. 52, ¶ 60).  Defendants had previously

---

[14]Additionally, the Court notes that Ramey stated that she was the "broker and part owner of Caribe Realty" (Doc. 114, Exhibit 4, p. 6).  The Developer Agreement stated that Caribe Realty, Inc. had acted as "a limited consensual dual agent" to the parties for purposes of the Developer Agreement (Doc. 112, Exhibit 2, ¶ 36); as such, the Court is not convinced that Ramey had the authority to give Bagley the right to assign his property rights to Promenade.

alleged that Plaintiffs had taken a check from Promenade for three hundred forty-six thousand, one hundred eighty dollars ($346,180) to consummate the agreement they had made though Plaintiffs did not have money in escrow with Turquoise Properties for the purchase of the condominium unit (*id.* at ¶¶ 33, 37).

The Court notes that "[t]o constitute conversion, there must be a wrongful taking, an illegal assumption of ownership, or an illegal use or misuse of another's property." *Gray v. Liberty Nat. Life Ins. Co.*, 623 So.2d 1156, 1160 (Ala. 1993) (citing *Gillis v. Benefit Trust Life Ins. Co.*, 601 So.2d 951 (Ala. 1992)).  Without looking at anything else, the Court cannot say, based on the evidence that has been presented thus far, that Defendants cannot prove this action as a matter of law. Therefore, Plaintiffs' Motion for Summary Judgment as to Defendants' conversion claim is **DENIED**.

The Court is mindful that Plaintiffs have argued that all of Defendants' tort claims must "fail because they did not incur damage as a proximate result of any alleged wrongful conduct" by Plaintiffs (Doc. 115, p. 12; *see generally* pp. 12-13).  While Defendants have not, to this point, shown exactly how they were damaged and the extent of their injuries, the Court is not inclined to grant summary judgment on this issue.  Rather, because Plaintiffs have not been successful in showing that Defendants could not present disputable issues of material fact

with regard to their claims, the Court is persuaded to allow their claims to proceed to a jury and let the jury decide what damages, if any, exist.  To that end, Plaintiffs' Motion for Summary Judgment is **DENIED** with regard to the proof of damages.

Plaintiffs have also argued that Defendants' breach of contract claim must fail (Doc. 115, pp. 13-14).  Defendants have asserted that Plaintiffs "breached [their] agreement with Promenade by taking Promenade's money and not legally assigning the purchase of the condominium to Promenade Group" (Doc. 52, ¶ 39).

The Court has previously found, in the discussion of Plaintiffs' Motion regarding Defendants' suppression claim, that there appears to be a problem with the assignment of the condominium to Promenade according to the Developer Agreement (*see* pp. 15-16).  That issue remains unresolved with regard to the breach of contract claim.  Therefore, Plaintiffs' Motion for Summary Judgment on Defendants' breach of contract claim is **DENIED**.

The Court will now take up Defendants' Motion on Plaintiffs' claim for abuse of process (Doc. 111, pp. 12-21).  In the Third Amended Complaint, Plaintiffs asserted the following:

> The wrongful initiation of this criminal
> investigation regarding a civil matter . . .
> amounts to abuse of process.  Ms. Phan had
> ulterior motives and purpose, [sic] she has
> wrongfully used the process and done so with

malice.  Said actions were completely without
basis and were maliciously designed and used
as retribution for plaintiffs [sic] filing
the original complaint, to merely gain a
tactical advantage in the civil matter, and
in an attempt to achieve purely private gain.

(Doc. 94, ¶ 35).  In asserting this claim, Plaintiffs have

pointed to an Alabama Supreme Court case as support for their

argument, *Willis v. Parker*, 814 So.2d 857 (Ala. 2001).  Though

lengthy, the Court notes the following specific analysis of this

tort:

> To establish a claim of abuse of
> process, [Plaintiffs] must prove:  "(1) the
> existence of an ulterior purpose; 2) a
> wrongful use of process, and 3) malice."
> *C.C. & J., Inc. v. Hagood*, 711 So.2d 947, 950
> (Ala. 1998).  "'[T]he [ulterior motive] must
> culminate in an actual abuse of the process
> by perverting it to a use to obtain a result
> which the process was not intended by law to
> effect. . . .'"  *Dempsey v. Denman*, 442 So.2d
> 63, 65 (Ala. 1983) (quoting 72 C.J.S. Process
> § 120, pp. 1190-91 (1951))(emphasis added).
> "'If the action is confined to its regular
> and legitimate function in relation to the
> cause of action stated in the complaint there
> is no abuse. . . .'" *Dempsey*, 442 So.2d at 65
> (quoting 1 Am.Jur.2d Abuse of Process § 13
> (1962)) (emphasis added).
>
> " [The defendant] is not liable for abuse of
> process simply because it prosecuted [the
> plaintiff] with an ulterior purpose.  [The
> plaintiff] was required to further show that
> [the defendant] wrongfully used the criminal
> process against [the plaintiff].  At the
> outset of this analysis, it would be helpful
> to note the difference between an abuse of
> process claim . . . and a malicious
> prosecution claim.  Malicious prosecution

19

concerns the wrongful issuance of process;
abuse of process concerns the wrongful use of
process after it has been issued.

\* \* \*

" Merely proceeding with a . . . complaint
and later agreeing to dismiss the charge
cannot constitute a wrongful use because:

> "'[ T]here is no liability where the
> defendant has done nothing other than
> carry out the process to its authorized
> conclusion, even though with bad
> intentions. . . . [I]t is what is done
> in the course of negotiation, rather
> than the issuance or any formal use of
> process itself, which constitutes the
> tort.'

\* \* \*

"[The defendant] cannot be liable for an
abuse of process claim unless [he] somehow
acted outside the boundaries of legitimate
procedure after the charge had been filed."

*Hagood*, 711 So.2d at 950-52 (citations
omitted; some emphasis in original; and some
emphasis added).

"When attempting to determine whether a
plaintiff has proven malice in an abuse of
process case, the focus is 'not [on whether
the defendant holds] ill will [against the
plaintiff], or [is acting out of] spite, but
rather, [whether] the [defendant] employed
the process . . . for an end not germane
thereto, for achievement of a benefit totally
extraneous to or of a result not within its
legitimate scope[.]'  Stuart M. Speiser et
al., *The American Law of Torts*, § 28:34, at
218 (1991).  Once the plaintiff establishes
an ulterior purpose and a wrongful use of
process, 'malice is made to appear in the
eyes of the law.'  *Clikos v. Long*, 231 Ala.
424, 428, 165 So. 394, 397 (1936).

> ***
>
> "[ M]alice in an abuse of process case
> involves not ill will or meanness, but the
> goal of achieving some result not properly
> achieved by the process undertaken. *See*
> Speiser, *supra*, § 28:34, at 218; *see also*
> *Clikos*, 231 Ala. at 428, 165 So. at 397."
>
> *Shoney's, Inc. v. Barnett*, 773 So.2d 1015,
> 1025 (Ala.Civ.App. 1999) (emphasis added).

*Willis*, 814 So.2d at 865-66.

The Court finds that Defendants have not shown that Plaintiff cannot prove the elements of an abuse of process claim. Though Plaintiff's arguments, to this point, amount to little more than assertions, the Court cannot say that this is not a viable claim. Therefore, Defendants' Motion for Summary Judgment as to the abuse of process claim is **DENIED**.

In summary, after looking at all the evidence of record, the Court finds no basis for granting summary judgment on any of the claims that have been raised in this action by any of the parties. Therefore, Defendants' Motion for Summary Judgment (Docs. 111-12) and Plaintiffs' Motion for Summary Judgment (Docs. 113-15) are both **DENIED** in their entirety.

DONE this 24th day of July, 2007.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE